**Michael E. Caples**, SBN No. 96340 (Admitted *Pro Hac Vice*)
Email: mcaples@fablaw.com
FITZGERALD ABBOTT & BEARDSLEY LLP
1221 Broadway, 21st Floor
Oakland, CA 94612
Portland, Oregon 97204
Telephone:    (510) 451-3300
Facsimile:    (510) 451-1527

**Keith A. Ketterling,** OSB No. 913368
Email: kketterling@stollberne.com
**Mark A. Friel**, OSB No. 002592
Email: mfriel@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Fifth Floor
Portland, Oregon 97204
Telephone:    (503) 227-1600
Facsimile:    (503) 227-6840

Attorneys for Defendant Scott Mahalick

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ENTERCOM COMMUNICATIONS CORP.; ENTERCOM SAN FRANCISCO, LLC; ENTERCOM SEATTLE, LLC; and ENTERCOMP PORTLAND, LLC, | Case No. 3:09-cv-1050-HA |
| Plaintiff(s), | **DEFENDANT SCOTT MAHALICK'S MEMORANDUM OPPOSING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| v. | **ORAL ARGUMENT REQUESTED** |
| SCOTT MAHALICK, LARRY WILSON, ROBERT PROFFITT, and ALPHA BROADCASTING, LLC, | |
| Defendant(s). | |

## TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................ 1

II.  FACTS ............................................................................................................... 2

    A.  Breach of Contract Claim ......................................................................... 2

    B.  Breach of Loyalty/Fiduciary Duty Claim ................................................ 5

III.  ARGUMENT ..................................................................................................... 6

    A.  Summary Judgment Standard .................................................................... 6

    B.  Applicable Substantive Law ...................................................................... 6

    C.  Plaintiffs' Motion as to the Breach of Contract Claim Fails Because They have  Failed to Present an  Iota of Evidence on the Necessary Element of Damages ........ 7

    D.  The Employment Agreement at Issue here is Void and Unenforceable Pursuant to California Business & Professions Code Section 16600, the Record Evidence Establishes Substantial Questions of Material Fact, or Affirmatively Establishes No Breach,  and Plaintiffs' Motion for Partial Summary Judgment on the Contract Claim Must be Denied ................................................................ 8

        1.  Business & Professions Coded section 16600 ................................ 8

        2.  The Illegal Provisions of the Contract ......................................... 10

            (a) Paragraph 5 ..................................................................... 11

            (b) Paragraph 8 ..................................................................... 12

            (c) Paragraph 9 ...................................................................... 12

            (d) Paragraph 19 .................................................................... 12

        3.  The Illegal Provisions are not Separable, and the Entire Contract is Void Under California Law ....................................................... 15

    E.  The Evidence does not Establish a Breach of the Contract Provisions Upon Which Plaintiffs Now Rely ...................................................................... 19

            (a) The Exclusivity Provision ....................................................... 19

            (b) The Confidentiality Provision ................................................. 22

    F.  The Breach of Duty of Loyalty Claim is Baseless, there Exist Questions of Material Fact Regarding the Claim and, if Anything, the Evidence Shows there was No Such Breach ........................................................................ 24

        1.  Plaintiffs' Motion as to the Breach of Fiduciary Duty and Duty of Loyalty  Claim Fails Because They have Failed to Present an Iota of Evidence on the Necessary Element of Damages ................................ 24

        2.  There was no Duty of Loyalty Owing from Mahalick to Entercom Communications Corp. or Entercom Portland LLC ............................ 24

        3.  The Record Evidence Presented does not Establish Mahalick Engaged in Activity Inimical to the Interests of Entercom SF or Entercom Portland ............ 25

(a) Lui-Kwan .................................................................................... 26

(b) The Portland Assessment ............................................................ 27

(c) Seattle Super Sonics .................................................................... 27

(d) Strategic Plan ............................................................................. 28

(e) Department Head Meeting Power Point ..................................... 28

(f) Digital Age Memo ....................................................................... 29

(g) Performer Promotion .................................................................. 29

    4.  Summary ................................................................................... 30

IV.   CONCLUSION ............................................................................... 30

TABLE OF AUTHORITIES

Page

**Cases**

*Abramson v. Juniper Networks, Inc.*
115 Cal.App.4th 638, 666-667 (2004) ........................................................ 17

*Adickes v. S.H. Kress & Co.*
398 U.S. 144, 157-59 (1970) .................................................................. 6, 31

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242, 248 (1986).......................................................................... 6

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
24 Cal.4th 83 (2000) ................................................................... 16, 17, 18

*Badie v. Bank of America*
67 Cal.App.4th 779, 801 (1998) ............................................................ 23

*Bancroft-Whitney Co. v. Glen*
64 Cal.2d 327, 347 (1966) ......................................................... 25, 26, 30

*Bosley Medical Group v. Abramson*
161 Cal.App.3d 284, 288 (1984) ........................................................... 15

*Careau and Co. v. Security Pacific Business Credit, Inc.*
222 Cal.App.3d 1371, 1388 (1990) .......................................................... 7

*Celotex Corp. v. Catrett*
477 U.S. 317, 322 (1986)....................................................................... 6, 31

*Diamond v. Atwood*
43 F.3d 1538, 1540 (D.C. Cir. 1995) ..................................................... 6, 31

*Doe 1 v. AOL, LLC.*
552 F.3d 1077, 1082 n.10 (9th Cir. 2009) ............................................. 23

*Dowell v. Biosense Webster, Inc.*
179 Cal.App.4th 564 (2009) .................................................................. 10

*Edwards v. Arthur Andersen LLP*
44 Cal.4th 937 (2008) ................................................................... 9, 12, 15

*Fowler v. Varian Associates, Inc.*, 196 Cal.App.3d 34, 41 (1987)........................................ 26, 30

*Huong Que, Inc. v. Luu*
150 Cal.App.4th 400, 410 (2007) ............................................... 24, 25, 30

*Mamou v. Trendwest Resorts, Inc.*
165 Cal.App.4th 686, 719 (2008) ..................................................... 22, 25

*Masonite Corp. v. Pacific Gas & Electric Co*
    (1976) 65 Cal.App.3d 1, 8 ............................................................................ 23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
    475 U.S. 574, 587-88 (1986) ..................................................................... 6, 31

*Mayhew v. Benninghoff*
    53 Cal.App.4th 1365, 1370 (1997) .............................................................. 23

*MCA Records, Inc. v. Newton-John*
    90 Cal.App.3d 18 (1979) ............................................................................. 18

*Motevalli v. Los Angeles Unified School District*
    122 Cal.App.4th 97 (2004) .......................................................................... 18

*Ontiveros v. DHL Express (USA), Inc.*
    164 Cal.App.4th 494, 515 (2008) ................................................................ 18

*Scott v. Snelling and Snelling*
    732 F.Supp. 1034, 1042 (N.D. Cal 1990) ...................................................... 8

*Stokes v. Dole Nut Co.*
    41 Cal.App.4th 285, 295 (1995) ............................................................. 25, 26

*Strategix, Ltd. v. Infocrossing West, Inc.*
    142 Cal.App.4th 1068, 1074 (2006) ............................................................ 11

*Weinberg v. Whatcom County*
    241 F.3d 746, 751 (9th Cir. 2001) ............................................................ 8, 24

*Yoo v. Jho*
    147 Cal.App.4th 1249, 1256 (2007) ............................................................ 18

### Statutes

California Business & Professions Code
    § 16600 ................................................................................................ passim
    § 16601 ....................................................................................................... 10
    § 16602 ....................................................................................................... 10
    § 16602.5 .................................................................................................... 10
    § 17200 ............................................................................................... 1, 3, 4

California Civil Code
    § 1598 .......................................................................................................... 16
    § 1599 ................................................................................................... 16, 18
    § 1608 ................................................................................................... 17, 18
    § 1654 .......................................................................................................... 23
    § 1670.5 ................................................................................................ 17, 18

Fed. R. Civ. P.
    56(b) ......................................................................................................... 6, 31

# I.    INTRODUCTION

Plaintiffs' begin their motion by indulging their fantasy that Scott Mahalick engaged in some grand scheme to injure Entercom while at the same time having the audacity to pursue opportunities for employment post-Entercom.  All of these nefarious activities, they claim, he then tried to comer up by engaging in his routine and longstanding practice of deleting emails from his personal account when it got full.  He furthered this cover-up, they claim, by refusing to succumb to their inquisition regarding his future plans, those plans, in fact, being none of their business.  Indeed, their pointed and repeated inquiry was in furtherance of a contract patently illegal under California Business & Professions Code section 16600 and in pursuit of a goal constituting an unfair business practice under California Business & Professions Code section 17200.

Plaintiffs' fantasy is not remotely related to reality.  Rather it is borne of their single-minded determination to punish and harass Mahalick for having the nerve to want to work elsewhere, for pursuing that desire as it is guaranteed under California law, and for choosing to end an employment governed by a contract that was patently illegal.  Even more, it was borne of "their worst nightmare" - that Mahalick's long-time friend, Defendant Larry Wilson, would reenter the broadcast radio business and begin competing with them, and that Mahalick would want to work with him.

Without the spin Plaintiffs attempt to impose upon them, the facts, quite simply, are these.

## II.    FACTS

### A.    Breach of Contract Claim

Mahalick is an experienced Program Director who has worked in that capacity for a number of radio stations, and companies owning radio stations, throughout the country, including at Citadel Communications, where he worked from 1992 to 2002, eventually reaching the position of National Program Director. Declaration of Scott Mahalick Opposing Plaintiffs' Motion for Partial Summary Judgment ("Mahalick Dec.") ¶ 1. In or about October 2005 Defendant Entercom recruited, and hired, Mahalick from his prior employer, Groovpix Entertainment, to serve as Program Director at its Seattle, Washington country music radio station, KKWF, which is owned by Entercom Seattle LLC. Soon thereafter, Mahalick moved to Seattle. Mahalick Dec. ¶ 2.

In or about February 2007, Entercom and Entercom SF requested that Mahalick relocate to San Francisco to become Program Director for Entercom SF's San Francisco country music station, KBWF. Mahalick did so in February 2007. Mahalick Dec. ¶ 3. On or about June 18, 2007, approximately three and one-half months after relocating to San Francisco, Entercom SF and Mahalick entered into a seven page employment agreement prepared by Entercom Communications. Having recently relocated to San Francisco at Entercom SF's request and for Entercom SF's benefit, and Entercom SF providing no indication the proposed agreement was negotiable, Mahalick felt he had no reasonable alternative and signed the agreement. Mahalick Dec. ¶ 4. The term of the contract was from February 28, 2007 through February 27, 2010. Mahalick Dec. ¶ 5 and Exhibit 1. The agreement was entered into in California to cover a California employee and, by its terms, is governed by California law. Mahalick Dec. ¶ 6 and Ex. 1 at ¶ 22.

The provisions of paragraphs 5.b., 8, 9.b. and 19 are illegal and void under California Business & Professions Code sections 16600 and 17200.

The original agreement was subsequently modified three times.  In October 2008, at Entercom SF's and Entercom Seattle's request, Mahalick agreed to act again as Program Director for the Seattle station, in addition to his duties as Program Director in San Francisco, requiring him to commute often between San Francisco and Seattle.  This addition to Mahalick's duties is reflected in a written modification to the Agreement, dated October 19, 2008.  The amendment was between Mahalick, Entercom SF and Entercom Seattle.  The amendment, among other things, added Mahalick's additional duties in Seattle, modified his compensation, and waived the Parties' rights to terminate the Agreement by requiring three months notice of termination prior to the end of the contract term.  The modification did not otherwise address or affect the illegal provisions of the Agreement.  Mahalick Dec. ¶ 7.

On August 12 and December 15, 2008, the Agreement was modified in writing as to its compensation terms.  Neither modification either addressed or affected the illegal provisions of the Agreement.  Mahalick Dec. ¶ 8 and Exhibit 2.

In or about the summer of 2009, for a variety of reasons, Mahalick became dissatisfied with his employment at Entercom SF.  In August 2009, Mahalick had a number of conversations with Entercom SF's and Entercom Seattle's representatives in which he expressed his desire to leave their employ.  Mahalick Dec. ¶ 9.  Entercom SF's representatives stated repeatedly that they would not allow Mahalick to terminate his employment if he was considering employment with a competitor of Entercom, especially in the Portland, Oregon market, and especially with any entity owned by Larry Wilson.  Entercom SF did agree to allow Mahalick to resign and work

for another organization that did not compete with Entercom SF, and of which Mahalick was a part owner, but only if he would sign a noncompetition agreement with Entercom, a condition that was, again, clearly illegal under Business & Professions Code section 17200, and if the other entity would pay Entercom $200,000.00.  Mahalick Dec. ¶ 10.

Throughout the first two weeks of August, Entercom SF representatives pressured Mahalick to tell them his plans, especially after leaving their employ, and especially as to whether he planned to work for a competitor or for Larry Wilson.  Both inquiries were information to which they were not entitled and, indeed, were made in furtherance of their illegal objective of keeping Mahalick from competing with them.  They also continued to insist that they would not agree to his resigning, would not agree to his working for a competitor after leaving their employ, would not agree to his working for any entity owned by Larry Wilson, and would sue him if he tried.  Mahalick Dec. ¶ 11.

On August 13, 2009, Entercom SF's General Manager, Dwight Walker, continued to insist, and inform Mahalick in writing, that the Agreement was valid and enforceable, informed Mahalick that Entercom "intend[s] to hold you to each of these provisions in your agreement," including the illegal provisions, and threatened Mahalick with legal action to do so.   Mahalick Dec. ¶ 12 and Exhibit 3.

On August 14, 2009, Mahalick tendered his resignation to Entercom SF and Entercom Seattle effective that day.  Following his resignation, Mahalick accepted employment with Alpha Broadcasting, another radio station owner, serving as a Program Director for the Portland, Oregon market.  Mahalick Dec. ¶ 14.  The agreement presented to Mahalick by Entercom SF in 2007 provided that during its term Mahalick could not "render any service to any radio station

that serves any portion of the San Francisco Metro Survey Area as defined by Arbitron Ratings Company."  It is undisputed that at no time relevant to this action did Mahalick render services to any radio station serving the San Francisco Metro Survey Area.  Mahalick Dec. ¶ 16 and Ex. 1 at ¶9b.

## B.    Breach of Loyalty/Fiduciary Duty Claim

Mahalick was never been employed by Entercom Portland LLC or Entercom Communications Corp., never worked in Portland, and did not provide services directly to any Entercom Portland LLC station while employed by Entercom.  Mahalick Dec. ¶ 15.  Mahalick devoted his full effort to Entercom SF and Entercom Seattle during his employment much, according to Plaintiffs' witnesses, to Entercom SF's and Entercom Seattle's benefit.  Mahalick Dec. ¶ 16.   At no time, during or after my employment at Entercom SF and Entercom Seattle did I provide services to any radio station serving the San Francisco Metro Survey area as defined by Arbitron Ratings Company.  Id.

Mahalick worked with Wilson earlier in his career at Citadel Communications.  In the course of that relationship they became good friends, so much so that Mahalick even attended the funeral for Wilson's wife in 2007.  Mahalick and Wilson maintained that friendship over the years following their time at Citadel, both before and during Mahalick's employment at Entercom SF.  As friends will do, they exchanged information related to their industry with each other.  At no time, however, did Mahalick actively assist Alpha or anyone else to compete with Entercom SF or Entercom Seattle.  Rather, while Mahalick remained loyal to Larry Wilson throughout his time from their employment at Citadel to now, as would be expected as a friend,

his loyalty as an employee was given to Entercom SF as long as he was employed.  They were

not, and are not, mutually exclusive.  Mahalick Dec. ¶ 17.

## III.    ARGUMENT

### A.    Summary Judgment Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);

*Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  The burden is on the moving party to

demonstrate that no genuine issue of material fact exists.  *Celotex*, *supra,* 477 U.S. at 323.  In

deciding whether there is a genuine issue of material fact, the court is to view the record in the

light most favorable to the party opposing the motion, giving the non-movant the benefit of all

favorable inferences that can reasonably be drawn from the record and the benefit of any doubt

as to the existence of any genuine issue of material fact.  *Matsushita Elec. Indus. Co. v. Zenith

Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59

(1970).  To determine which facts are "material," a court must look to the substantive law on

which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine

issue" is one whose resolution could establish an element of a claim or defense and, therefore,

affect the outcome of the action.  *Celotex*, *supra,* 477 U.S. at 322; *Anderson*, *supra,* 477 U.S. at

248.

### B.    Applicable Substantive Law

Based upon their argument, Plaintiffs appear to concede that the substantive law

applicable to the breach of contract part of their motion is California.  Since the contract at issue

provides by its terms that it is governed by California law, it was entered into in California, and it was between a California resident and his employer with its place of business in California, that is not surprising.

They hedge on the breach of loyalty claim, though.  First, they claim that it does not matter whether the court applies California or Oregon law as they are substantially the same. That is not necessarily true.  More to the point, because the claim arises from an employment relationship governed by a California contract applicable to the employment relationship between a California resident and his California employer, and all actions complained of as the basis for the claim occurred solely within this California setting, *only* California law will govern this claim.

**C.    Plaintiffs' Motion as to the Breach of Contract Claim Fails Because They have Failed to Present an  Iota of Evidence on the Necessary Element of Damages**

To establish a breach of contrtact claim under California law it is necessary to prove each of four essential elements: (1) the existence of a valid and subsisting contract based upon the mutual assent of the parties thereto; (2) the plaintiff's performance or excuse for non-performance; (3) the defendant's breach of said contract; and (4) resulting damages.  *Careau and Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1388 (1990).  Here, Plaintiffs' motion fails on at least two of those elements.  First, Plaintiffs have not made the slightest attempt to establish by admissible evidence the essential element of damages.  Where a party fails to offer competent evidence of damages, that party has failed to establish an essential element of their claim and summary judgment must be granted or, where as here the moving party has failed to establish the element, the motion must be denied.  *See, e.g., Weinberg v. Whatcom County*, 241 F.3d 746, 751 (9th Cir. 2001).  ("Because [plaintiff] failed to offer

competent evidence of damages, dismissal on summary judgment was appropriate with respect to all claims for which [plaintiff] bore the burden of establishing the amount of actual harm he suffered as a result of the [defendant's] actions.")

Second, the facts establish that the contract Plainiffs' seek to enforce was void, or at least there is a substantial question of material fact in that regard.  Therefore, Plaintiffs' motion must be denied.  The first fatal defect in Plaintiffs' motion is self-evident.  The second is addressed further below.

**D.     The Employment Agreement at Issue here is Void and Unenforceable Pursuant to California Business & Professions Code Section 16600, the Record Evidence Establishes Substantial Questions of Material Fact, or Affirmatively Establishes No Breach,  and Plaintiffs' Motion for Partial Summary Judgment on the Contract Claim Must be Denied**

**1.     Business & Professions Coded section 16600**

The starting point for any analysis of the validity of the contract at issue here is California Business & Professions Code section 16600, which provides:  "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."  "California courts have repeatedly held that section 16600 should be interpreted as broadly as its language reads."  *Scott v. Snelling and Snelling*, 732 F.Supp. 1034, 1042 (N.D. Cal 1990).  "A simple reading of this statue, giving the words their ordinary meaning, demonstrates that the California state legislature intended section 16600 to apply to any sort of contract which contains a covenant restraining competition."  Id. at 1040 (emphasis added)

The California Supreme Court has emphasized the broad scope of section 16600 and the non-enforceability of post employment noncompete provisions.  In *Edwards v. Arthur Andersen LLP* 44 Cal.4[th] 937 (2008), the court wrote:

Today in California, covenants not to compete are void, subject to several exceptions discussed briefly below. …

… In the years since its original enactment as Civil Code section 1673, our courts have consistently affirmed that section 16600 evinces a settled legislative policy in favor of *open competition* and *employee mobility*. (See *D'sa v. Playhut, Inc.* (2000) 85 Cal.App.4th 927, 933, 102 Cal.Rptr.2d 495.) The law protects Californians and ensures "that every citizen shall retain the right to *pursue any lawful employment and enterprise of their choice.*" (*Metro Traffic Control, Inc. v. Shadow Traffic Network* (1994) 22 Cal.App.4th 853, 859, 27 Cal.Rptr.2d 573.) It protects "the important legal right of persons to engage *in businesses and occupations of their choosing.*" (*Morlife, Inc. v. Perry* (1997) 56 Cal.App.4th 1514, 1520, 66 Cal.Rptr.2d 731.)

… *Muggill* [*v. Reuben H. Donnelley Corp.* (1965) 62 Cal.2d 239, 242-243] held that, with exceptions not applicable here, section 16600 invalidates provisions in employment contracts … that *prohibit* "an employee from working for a competitor after completion of his employment *or imposing a penalty* if he does so [citations] unless they are necessary to protect the employer's trade secrets [citation]." (*Muggill*, at p. 242, 42 Cal.Rptr. 107, 398 P.2d 147.) In sum, following the Legislature, this court generally condemns noncompetition agreements. (See, e.g., *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 123, fn. 12, 99 Cal.Rptr.2d 745, 6 P.3d 669 [such restraints on trade are "illegal"].)

*Id.* at 945-946 (emphasis added, footnote omitted). The court specifically rejected Andersen's assertion "that we should interpret the term 'restrain' under section 16600 to mean simply to 'prohibit,' so that only contracts that totally prohibit an employee from engaging in his or her profession, trade, or business are illegal. *Id.* at 947. The Supreme Court also broadly concluded that section 16600 "prohibits employee noncompetition agreements unless the agreement falls within a statutory exception." *Id.* at 942. *See also id.* at 955. No such statutory exception exists here.[1]

---

[1]   There are only three statutory exceptions to this prohibition on noncompete agreements: One who sells the goodwill of a business, or all of one's ownership interest in a business entity (which includes partnerships or corporations), or substantially all of its operating assets and goodwill, to a buyer who will carry on the business may agree with the buyer not to carry on a similar business within a specified geographic area, if the business will be carried on by the buyer (§ 16601); upon dissolution of a partnership or dissociation of a partner, such partner may agree not to carry on a similar business within a specified geographic area, if the business will be carried on by remaining partners or anyone deriving title to the business or its goodwill (§ 16602); and a member of a limited liability company may agree not to carry on a similar business within a specified geographic area, so long as other members or anyone deriving title to the business or its goodwill carries on a like business (§ 16602.5).

Most recently, the Court of Appeal passed on this issue in *Dowell v. Biosense Webster, Inc.*, 179 Cal.App.4th 564 (2009).  In *Dowell*, the Plaintiffs sued to have declared invalid the restrictive covenants of their employment contracts with their former employer.  The court held:

> Section 16600 expresses California's strong public policy of protecting the right of its citizens to pursue any lawful employment and enterprise of their choice. ( *Advanced Bionics Corp. v. Medtronic, Inc.* (2002) 29 Cal.4th 697, 706, 128 Cal.Rptr.2d 172, 59 P.3d 231; *Weber, Lipshie & Co. v. Christian* (1997) 52 Cal.App.4th 645, 659, 60 Cal.Rptr.2d 677 ["section 16600 was adopted for a public reason"].) California courts "have consistently affirmed that section 16600 evinces a settled legislative policy in favor of open competition and employee mobility." ( *Edwards v. Arthur Andersen LLP* (2008) 44 Cal.4th 937, 946, 81 Cal.Rptr.3d 282, 189 P.3d 285 (*Edwards* ).) "The interests of the employee in his own mobility and betterment are deemed paramount to the competitive business interests of the employers, where neither the employee nor his new employer has committed any illegal act accompanying the employment change." ( *Diodes, Inc. v. Franzen* (1968) 260 Cal.App.2d 244, 255, 67 Cal.Rptr. 19; *D'Sa v. Playhut, Inc.* (2000) 85 Cal.App.4th 927, 933, 102 Cal.Rptr.2d 495 (*D'Sa* ).) An employer's use of an illegal noncompete agreement also violates the UCL (§ 17200 ["unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising"].) ( *Application Group, Inc. v. Hunter Group, Inc.* (1998) 61 Cal.App.4th 881, 906-908, 72 Cal.Rptr.2d 73 [section 17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under section 17200].)

*Id.* at 575.

## 2.    The Illegal Provisions of the Contract

There are numerous illegal provisions of the subject contract.  Indeed, they are so numerous, so pervasive a part of the contract as a whole, and so overbearing that they render the entire contract void.

> [C]ourts will not strike a new bargain for the parties "for the purposes of saving an illegal contract." (*Kolani v. Gluska* (1998) 64 Cal.App.4th 402, 406 (*Kolani*).) In *Kolani*, the court declined to "rewrite the broad covenant not to compete into a narrow bar on theft of confidential information." fn. 4 (*Id.* at p. 408.) [5] We decline to rewrite overbroad covenants not to solicit Infocrossing's employees and

---

*Dowell v. Biosense Webster, Inc.* 179 Cal.App.4th 564 (2009).

customers into narrow bars against soliciting Strategix's former employees and customers. Had the parties intended to reach such limited -- and enforceable -- covenants, they could have negotiated for them. We will not do so for the parties now.

*Strategix, Ltd. v. Infocrossing West, Inc*. 142 Cal.App.4th 1068, 1074 (2006).

### (a)    Paragraph 5

The first fatal provision states that Mahalick may not participate in even the most remote fashion, for a period of one year after his employment ends, in the employment of *any* then-current Entercom SF employee, or *former* employee who had been employed in the last ninety days,  by *any* other employer for *any* reason doing *any* job.  Even more striking is the fact that, even if Mahalick played absolutely no role in such subsequent employment, the contract would have it *conclusively presumed* that if such a former Entercom SF employee, even if they left employment before Mahalick, "becomes employed at any station where [Mahalick] becomes employed or by co-owned stations in the same market," Mahalick violated this illegal provision. See paragraph 5.b.  Such a provision is illegal under section 16600.  *See, e.g., Strategix, supra,* 142 Cal.App.4th at 1073 (Even in the context of the sale of the goodwill of a business, "nonsolicitation covenants barring the seller from soliciting *all* employees and customers of the buyer, even those who were not former employees or customers of the sold business, extend their anticompetitive reach beyond" what is permitted).

In **any** event, *any* contract provision "restrain[ing] a former employee from engaging in his or her profession, trade, or business," whether or not that restraint is a "narrow one," violates section 16600.  *Edwards, supra*, 44 Cal.4[th] at 946-947.

**(b)    Paragraph 8**

Paragraph 8 purports to allow the parties to extend the agreement beyond its term on an at-will basis.   However, continuing its efforts at remaining free to enforce an involuntary servitude, in the event Mahalick were to elect to terminate without cause, he was to give at least two weeks notice, which Entercom SF could then accept or reject in its sole discretion.

**(c)    Paragraph 9**

Paragraph 9 also is illegal.  Paragraph 9.a. is completely devoid of mutuality, permitting Entercom SF to terminate the contract at any time for cause, though "cause" is defined nowhere, but Mahalick has no similar right.  Further, if Entercom SF elects to terminate the contract pursuant to paragraph 9.b. by giving three months notice prior to the end of an anniversary year, it has to pay Mahalick four months' severance.  However, if Mahalick were to accept employment with *any* other station in the San Francisco market, not necessarily even a competitor of Entercom SF, he forfeits the payment.  See paragraph 9.  Such forfeiture provisions are illegal under California law.  "[S]ection 16600 invalidates provisions in employment contracts … that prohibit 'an employee from working for a competitor after completion of his employment *or imposing a penalty if he does so* [citations] unless they are necessary to protect the employer's trade secrets [citation].' ( *Muggill*, at p. 242, 42 Cal.Rptr. 107, 398 P.2d 147.)"  *Edwards, supra,* 44 Cal.4[th] at 946.

**(d)    Paragraph 19**

The most offensive provision to well-settled California law, though, is paragraph 19.  Paragraph 19.a. prohibits Mahalick even to seek other employment with any other broadcaster of any kind, even television or satellite, other than Entercom SF during the term of the contract

(except the last 30 days).  Even more amazing, if any such prospective employer even approached Mahalick, he had to report the approach to Entercom SF.

Paragraph 19.b. is even more outrageous.  It requires Mahalick, not only during the last thirty days of the term of the contract, *but for six months after the termination of the agreement*, without reference to the reason for such termination or who effected the termination, to give Entercom SF a "first right of refusal."  Thus, Mahalick could not accept an offer of employment from *any* radio station *anywhere*, even months after the termination of his employment and the contract, without first requiring the prospective employer to reduce the employment offer to writing (thus seeking by this contract to regulate the employment practices of non-parties to the contract).  Then, Mahalick had to give Entercom SF "the first opportunity to enter into a new agreement with [Mahalick] on terms and conditions at least as favorable to [Entercom SF] as those offered to [Mahalick] by the other station; however, [Entercom SF] will only be required to meet any provision contained in that Offer which calls for the payment of money in a substantially comparable manner."

In other words, Entercom SF sought to subject Mahalick to an indentured servitude, however well paid.  Entercom SF did not even have to match what might have been the most important parts of such new employment offer - duties, responsibilities, authority, location, title, work environment, station format and opportunity for advancement.  All they had to do was match the pay; not even benefits.  Only if Entercom SF does not match the pay provisions of such an employment offer may Mahalick accept, and then only if there is no change in the offer from the prospective employer, whether better or worse than the prior offer.  Should such a change in the offer occur, the entire process had to be repeated.

Finally, paragraph 19.c. makes clear that there is not even a pretense of mutuality.  Thus, while Mahalick may not accept employment without Entercom's approval, Entercom does not actually have to match any employment offers, even in compensation.  However, if they do not, and Mahalick accepts such subsequent employment, his subsequent employment with another employer is subject to all the terms of the expired or terminated Entercom SF contract.  In other words, the terms of the Entercom SF agreement are imposed upon the relationship between Mahalick and a subsequent employer.  And finally, paragraph 19 confirms Mahalick's indentured servitude to the extent that, notwithstanding any decisions or behavior by Entercom SF, he does not have the same right as Entercom SF to terminate the contract unilaterally.

While Entercom SF has attempted to not-very-subtly disguise the fact that paragraph 19 is a post-employment non-compete provision, it is a noncompete provision nonetheless, and as such is unenforceable under California law.  Rather than coming straight out and saying Mr. Mahalick may not engage in post Entercom SF employment with a competitor, Entercom SF has broken the process of obtaining employment into its constituent parts and prohibits each of them.  Thus, Paragraph 19.a. does not state that Mr. Mahalick may not forego employment with a competitor, it simply purports to prohibit him from seeking employment with anyone, competitor or not, while still employed at Entercom SF, and requires him to inform Entercom SF of any approaches from any other employers, competitors or not.

Similarly, Paragraph 19.b does not say that Mr. Mahalick may not accept employment offered by competitor, but purports instead to regulate his dealings with other potential employers, even well after the term of the current contract has expired and he no longer is employed by Entercom SF.  That Paragraph purports to prohibit Mr. Mahalick from accepting

any such subsequent employment, even as long as six months after his contract with Entercom expires by its own terms, unless Mr. Mahalick first provides Entercom SF the opportunity to match only the monetary part of the offer.  This apparent indentured servitude (however well paid) has no limit in time, but is self perpetuating, since Paragraph 19.b would have the existing agreement, with all its illegal terms, continue ad infinitum.

In light of the broad interpretation of section 16600, California courts routinely reject sham transactions and agreements designed to avoid the strict rule against post employment restrictions on pursuing freely a trade or business.  For example, in *Bosley Medical Group v. Abramson* 161 Cal.App.3d 284, 288 (1984)*,* the employer, which imposed a post employment restrictive covenant upon its employee, required the employee to buy a noncontrolling interest in the practice, which the employee then had to sell back upon terminating employment, thus attempting to bring itself within the narrow exception of section 16601.  The court rejected the transaction as a sham.  Likewise, here, Paragraph 19 is a sham to avoid the strict application of section 16600.  As the *Edwards* court held, *any* contract provision "restrain[ing] a former employee from engaging in his or her profession, trade, or business," whether or not that restraint is a "narrow one," violates section 16600.  *Edwards, supra*, 44 Cal.4[th] at 946-947.[2]

### 3.    The Illegal Provisions are not Separable, and the Entire Contract is Void Under California Law

Plaintiffs also claim that the illegality of the contract does not prevent their claim here because the numerous illegal provisions of the contract are severable from the rest of the

---

[2]  In this respect, it is worth noting in terms of the grossly illegal nature of the employment agreement at issue here that Plaintiffs wisely chose not to assert here a breach of paragraphs 19(a) (Exclusivity) or (b) (Right of First Refusal), each of which, were it not so grossly illegal under California law, arguably would have been breached by Mahalick's negotiating with Alpha for new employment and accepting the employment after he resigned from Entercom SF and Entercom Seattle.  This is particularly telling as to Plaintiffs' own clear awareness that the contract between Mahalick and Entercom SF was plainly illegal and void.

agreement.  They are mistaken.  *See Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal.4th 83 (2000). The California Supreme Court's decision in *Armendariz* is particularly instructive.  There, the court dealt with the question of whether to invalidate only portions of an illegal employment arbitration agreement, or the entire agreement.  The court voided the entire agreement, stating:

> In this case, two factors weigh against severance of the unlawful provisions. First, the arbitration agreement contains more than one unlawful provision; it has both an unlawful damages provision and an unconscionably unilateral arbitration clause. Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage.

*Id*. at 124.  The court could as easily have been writing about the contract at issue here.  In this case, though, there are three very significant illegal provisions of the contract.  One of those, paragraph 19, has three illegal subparts.  The illegality is so pervasive, in fact, that it raises the question of whether the illegal provisions were not, in fact, to point and focus of the agreement to begin with.  Those illegal provisions are discussed fully above, which argument will not be repeated here.  It is enough to say, as did the court in *Armendariz*, that "[s]uch multiple defects indicate a systematic effort to impose [an illegal objective upon Mahalick]."  *Id*.

The California Civil Code contains four sections applicable to this dispute and this motion.  Section 1598 provides that "[w]here a contract has but a single object, and such object is unlawful, whether in whole or in part, or wholly impossible of performance, or so vaguely expressed as to be wholly unascertainable, the entire contract is void."  Section 1599, provides that "[w]here a contract has several distinct objects, of which one at least is lawful, and one at least is unlawful, in whole or in part, the contract is void as to the latter and valid as to the rest."  Section 1670.5 provides that "[i]f the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause,

or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."  Finally, section 1608 provides that "[i]f any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void."

The overarching inquiry in determining whether to sever is whether the interests of justice would be furthered by severance.  *Id.* at 124.  "Courts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate."  *Id.*  Applying these tents in the case before it, the California Supreme Court reached the conclusion noted above, as this court should reach the same conclusion here.  The entire contract is void.  *See also Abramson v. Juniper Networks, Inc.*, 115 Cal.App.4[th] 638, 666-667 (2004) (arbitration agreement with multiple illegal provisions; court refused to sever; entire contract void)

As the court noted in *Abramson*, quoting *Armendariz*, there are two reasons to sever or restrict objectionable contract provisions rather than invalidating the entire contract.

> One is "to conserve a contractual relationship if to do so would not be condoning an illegal scheme. [Citations.]" (*Armendariz, supra,* 24 Cal.4[th] at p. 124, 99 Cal.Rptr.2d 745, 6 P.3d 669.) The other is "to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement-particularly when there has been full or partial performance of the contract. [Citations.]" (*Id.* at pp. 123-124, 99 Cal.Rptr.2d 745, 6 P.3d 669.) *Now that the parties' employment relationship has ended, neither reason applies here.*

*Id.* at 667 (emphasis added).  The same, of course, is true here.  There is no contractual relationship to conserve, trying to conserve it would simply perpetuate Entercom's illegal scheme, and voiding the contract gains neither party an undeserved benefit, nor imposes upon either party an undeserved detriment.  *See Ontiveros v. DHL Express (USA), Inc.*, 164

Cal.App.4[th] 494, 515 (2008) (applying Civil Code sections 1599 and 1670.5, and following the direction of the *Armendariz* court, the court upheld the trial court's refusal to sever the illegal or unconscionable provisions because at least three provisions of the agreement were unconscionable and, "[g]iven these multiple unlawful provisions, the trial court did not abuse its discretion in determining that the agreement is 'permeated with unconscionability and will not be enforced.'")

Finally, the consideration for the contract at issue here from Mahalick was rendering his services and agreeing to the numerous illegal provisions of the contract. Where "any part of a single consideration for one or more objects, or of several considerations for a single object, is unlawful, the entire contract is void." Civil Code § 1608. *Yoo v. Jho*, 147 Cal.App.4[th] 1249, 1256 (2007).

At the very least, it is a question of fact under California law whether the numerous illegal provisions of the contract should be severed so as to save the rest of the contract. *Marathon Entertainment v. Blasie,* 42 Cal.4[th] 981 (2008).

Plaintiffs' contrary argument is entirely unpersuasive. They rely upon two inapposite cases to support their untenable position. Primarily[3], they cite *MCA Records, Inc. v. Newton-John*, 90 Cal.App.3d 18 (1979) for the general, though irrelevant, proposition that California law recognizes the validity of fixed term contracts. *Newton-John*, to begin with, was not an employment case. It was a case involving an independent contractor agreement for personal services between an artist and a recording company involving the artist recording records for the Plaintiff. *Id.* at 21. It was solely upon this basis that the case was decided. *Id.* at 21-22. The

---

[3] Plaintiffs also rely, curiously, upon *Motevalli v. Los Angeles Unified School District,* 122 Cal.App.4[th] 97 (2004). *Motevalli* is a public sector case that does not even address the issue of contract terms, but simply holds that refusal of a public school district to renew the contract of a probationary employee after the first year of employment is not a wrongful termination.

case does not address the question of the explicit limitation of Business & Professions Code section 16600 on employment.

**E.    The Evidence does not Establish a Breach of the Contract Provisions Upon Which Plaintiffs Now Rely**

Setting aside the fact that the contract at issue is void to begin with, in this motion, Plaintiffs rely upon only two paragraphs of the agreement as having purportedly been breached. They are wrong on each count, and there are, at the least, triable issues of material fact as to each.

**(a)    The Exclusivity Provision**

Plaintiffs claim in this motion that Mahalick breached the exclusivity provision of his employment agreement in five separate ways: (1) preparing an assessment of the Portland market for Alpha; (2) not disclosing the assessment to "Entercom"; (3) suggesting vendors to Alpha that Entercom also used; (4) participating in a meeting on a work day to explore acquisition opportunities for Alpha; and (5) providing misleading information to "Entercom" about one of its employees. Memo Supporting Motion for Partial Summary Judgment, 14. They are wrong on every claim.

First, whether deliberately or otherwise, Plaintiffs obfuscate by whom Mahalick was employed and with whom he had a contractual relationship, to the extent there was a valid contract to begin with. By its very terms, the contract at issue was solely between Entercom San Francisco LLC and Mahalick. Mahalick Dec. ¶¶ 4, 15, 16 and Ex. 1. That the agreement was between only Entercom SF and Mahalick was confirmed in three subsequent amendments. The second of these also states: "This Second Amendment shall be between Entercom San Francisco, Entercom Seattle, LLC ("Entercom Seattle" d/b/a KKWF-FM ("KKWF') and

Employee."  Mahalick Dec. ¶¶ 7, 8 and Ex. 2.  Thus, while the amendment also states that all

other terms of the original amended agreement remain unchanged, there is a material question of

fact whether anything other than the amended terms, which do not include exclusivity or

confidentiality, apply between Entercom Seattle and Mahalick.  In any event, the employment

agreement clearly was. *not* with some undifferentiated "Entercom," nor was it with Entercom

Portland LLC or Entercom Communications Corp., both of which are entirely separate and

distinct legal entities.

Second, knowing the agreement was between Mahalick and Entercom SF, and at least to

some extent between Entercom Seattle and Mahalick, we look at Mahalick's alleged conduct.

First it is worth noting that neither Entercom SF nor Entercom Seattle does business in Portland,

Oregon.[4]

Regarding the specific claims:

(1) There is no evidence that the assessment of the Portland market Mahalick provided to

Larry Wilson was prepared on work time.  To the contrary, the uncontradicted evidence is that it

was prepared on Mahalick's own time.  Nowhere in the assessment does he address the San

Francisco or Seattle markets.  There is no evidence he was paid for the work or, indeed, that it

---

[4] Paragraphs 5 through 7 of the 1st Amended Complaint allege:

    5.  Entercom San Francisco, LLC ("Entercom San Francisco") is a Delaware limited liability company headquartered in San Francisco, California. Entercom San Francisco operates country music station KBWF-FM ("KBWF") (as well as several other stations) in San Francisco, California.

    6.  Entercom Seattle, LLC ("Entercom Seattle") is a Delaware limited liability company headquartered in Seattle, Washington. Entercom Seattle operates country music station KKWF-FM ("KKWF") (as well as several other stations) in Seattle, Washington.

    7.  Entercom Portland, LLC ("Entercom Portland") is a Delaware limited liability company headquartered in Portland, Oregon. Entercom Portland operates country music station KWJJ-FM ("Wolf brand KWJJ") (as well as several other stations) in Portland, Oregon.

was anything other than the sort of exchange of industry information that will occur between colleagues and old friends.  Mahalick Dec. ¶ 20 and Ex. 5.

(2) The contract did not require that Mahalick disclose to Entercom SF his thoughts, or materials he generated, that had no bearing on Entercom SF's business, which they allege themselves was limited to "operat[ing] country music station KBWF-FM ("KBWF") (as well as several other stations) in San Francisco, California."  (1st Am Comp., ¶ 5)

(3) Nothing in the contract with Entercom SF prevented Mahalick from exchanging his thoughts regarding providers of voice or other services (what Entercom calls "vendors") with friends in the radio broadcast business, whether or not those vendors also provided services to Entercom SF.  Those vendors often have agents that market their services, and they commonly provide services to multiple stations.  Especially when speaking of on-air talent, but also other employees, there is nothing confidential about their identities or the fact that they work for a particular station, including Entercom stations.  Mahalick Dec. ¶ 23, 29.

(4) The assertion that Mahalick participated on a work day in a meeting regarding possible Alpha acquisitions is, plainly put, patently false.  The meeting referred to was one Mahalick attended on his own time, having taken a vacation day.  The meeting had nothing to do with Alpha, which did not exist at the time.  It was, rather, an exploratory meeting between his long time friend, Larry Wilson, and an investment group about the possibility at some point of buying certain stations, at the time not determined, in markets also not determined, that were owned at the time by either Citadel Broadcasting or Susquehanna Broadcasting Company.  The exploration never proceeded past this initial meeting.  Mahalick Dec. ¶ 19.  The law in California is clear that "[a]n employee does not breach his duty of loyalty by preparing to compete with his

employer." *Mamou v. Trendwest Resorts, Inc.*, 165 Cal.App.4[th] 686, 719 (2008). *See also Bancroft-Whitney, supra,* 64 Cal.2d at 347. This includes, even, the employee's forming a potentially competing corporation. *Mamou, supra,* 165 Cal.App.4[th] at 719; *Bancroft-Whitney, supra,* 64 Cal.2d at 347.

(5) While Entercom SF would like to characterize the information from Mahalick regarding Mr. Lui-Kwan as misleading, it was in fact entirely accurate, and independently agreed to by Entercom SF management. Lui-Kwan was employed by Entercom SF as both a programmer and an on-air personality. The information Mahalick provided, as reflected in the Answer to paragraph 57 of the First Amended Complaint, to which Plaintiffs cite, was that "Lui-Kwan not be renewed as an on-air personality because his on-air performance and ratings were not good," an objectively verifiable fact with which Entercom SF's management agreed. That is distinct from his performance as Assistant Program Director, which was good and of which Mahalick informed Entercom SF's management. Mahalick's endorsement of Lui-Kwan later was as a programmer, not as an on-air personality. Mahalick Dec. ¶¶ 22-24.

Thus, the record evidence not only establishes that there are at least many triable issues of material fact regarding the breach of contract claim as to the exclusivity clause, but actually affirmatively establishes that there was no such breach.

(b)    **The Confidentiality Provision**

The confidentiality paragraph of the agreement provides:

12. **Confidentiality**. During Employee's employment with the Company, Employee will receive information and training which are proprietary to the Company, including without limitation customer lists, pricing, programming techniques, financial information, sales strategies and methods and promotional programs and techniques. Employee agrees that all such information is the sole and exclusive property of the Company, and that Employee will safeguard all such information and maintain it as secret and confidential and Employee further

agrees that Employee will not at any time disclose such information to any third party without the express prior written consent of the General Manager of the Company. Employee's obligations under this Section shall survive the expiration or termination of this Agreement.

Other than Plaintiffs' conclusory assertion, there is no evidence that Mahalick disclosed such information to unauthorized persons.  First, it must be noted that the agreement was drafted by Entercom SF and given to Mahalick with no meaningful opportunity to negotiate.  Therefore, the contract, to the extent there is ambiguity, is interpreted against Entercom SF.  California Civil Code section 1654[5]; *Badie v. Bank of America*, 67 Cal.App.4th 779, 801 (1998); *Masonite Corp. v. Pacific Gas & Electric Co.* (1976) 65 Cal.App.3d 1, 8 (contract construed against "one who caused the ambiguity to exist, i.e., the drafter.").  *See also Doe 1 v. AOL, LLC.*, 552 F.3d 1077, 1082 n.10 (9th Cir. 2009).

Second, the only "confidential" information actually identified in the Agreement is "customer lists, pricing, programming techniques, financial information, sales strategies and methods and promotional programs and techniques."  Anything else apparently is left to the separate imaginations of the Parties.  Certainly, there is not an ounce of evidence that the two claimed breaches of confidentiality, the names of undisclosed "vendors" and Mahalick's opinion of Lui-Kwan (Plf Concise Stmt. of Facts, ¶¶ 6 & 10; Plf. Memo in Suppt, 14) involved confidential information generically, or confidential information of the sort actually listed in the agreement.  On the contrary, to the extent "vendors" involved on-air personalities, clearly their identity, broadcast to the world within broadcast range, was not confidential.  To the extent it

---

[5] Civil Code section 1654 provides:  "In case of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."  The rule of section 1654 is applied more strongly in the case of adhesion contracts, such as is the contract at issue here. *Badie v. Bank of America*, 67 Cal.App.4th 779, 801 (1998).  It also applies with greater force when the person who prepared the writing is a lawyer.  *Mayhew v. Benninghoff*, 53 Cal.App.4th 1365, 1370 (1997).

involved other sorts of undisclosed "vendors," such as consultants, these are persons known generally in the industry to provide services to a variety of stations.

Again, not only does the record evidence establish there are, at the very least, substantial questions of material fact regarding this claimed breach, but the evidence before the court actually establishes affirmatively that there was not such breach.  See also argument in section F, below.

**F.    The Breach of Duty of Loyalty Claim is Baseless, there Exist Questions of Material Fact Regarding the Claim and, if Anything, the Evidence Shows there was No Such Breach**

The elements under California law for a cause of action for breach of the duty of loyalty by an employee are:  (1) the existence of a relationship giving rise to a duty of loyalty, (2) one or more breaches of that duty, and (3) damages proximately caused by that breach.  *Huong Que, Inc. v. Luu*, 150 Cal.App.4th 400, 410 (2007).  A duty of loyalty can spring from an employment relationship.  *Id.*

**1.    Plaintiffs' Motion as to the Breach of Fiduciary Duty and Duty of Loyalty  Claim Fails Because They have Failed to Present an Iota of Evidence on the Necessary Element of Damages**

As was the case with their breach of contract claim, Plaintiffs have not made the slightest attempt to establish by admissible evidence the essential element of damages.  As with their contract claim, having offered no evidence establishing the necessary element, their motion must fail.  *See, e.g., Weinberg, supra,* 241 F.3d at 751.

**2.    There was no Duty of Loyalty Owing from Mahalick to Entercom Communications Corp. or Entercom Portland LLC**

The duty of loyalty is breached, and the breach "may give rise to a cause of action in the employer, *when the employee takes action which is inimical to the best interests of the employer*."  *Stokes v. Dole Nut Co.*, 41 Cal.App.4th 285, 295 (1995) (emphasis added).  Thus,

"[t]he significant inquiry in each situation is whether the officer's acts or omissions constitute a breach under the general principles applicable to the performance of his trust."  *Bancroft-Whitney Co. v. Glen*, 64 Cal.2d 327, 347 (1966)  In other words, it is not enough that confidential information might have been disclosed; the acts must be inimical to the interest of the employer - in this case Entercom SF.  This is a fact intensive inquiry appropriate for the jury.  Finally, California law not only permits an employee to seek other employment, and even to make some preparations to compete, before resigning, the employee is under no obligation to disclose those efforts to his current employer.  *Bancroft-Whitney, supra,* 64 Cal.2d at 347; *Fowler v. Varian Associates, Inc.*, 196 Cal.App.3d 34, 41 (1987); *Mamou, supra,* 165 Cal.App.4th at 719.

The first thing to establish here is to whom Mahalick owed a duty of loyalty, for it certainly is true that employees owe a duty of loyalty to their employers that prohibits them from acting in ways inimical to the employers' interests.  *Huong Que, supra*, 150 Cal.App.4th at 414; *Stokes , supra,* 41 Cal.App.4th at 295.  Here, the undisputed evidence is that the only relationship giving rise to a duty of loyalty is the employment relationship.  That relationship existed only between Entercom SF and, to some extent, Entercom Seattle.  There was no such relationship between Mahalick and the separate legal entities of Entercom Portland and Entercom Communications.  Therefore, as a matter of law, there was no duty of loyalty owing to them.

**3.     The Record Evidence Presented does not Establish Mahalick Engaged in Activity Inimical to the Interests of Entercom SF or Entercom Portland**

The issue in the breach of loyalty claim, then, is whether Mahalick took action that was inimical to the best interests of Entercom SF or Entercom Seattle.  *Stokes, supra,* 41 Cal.App.4th at 295.  Plaintiffs here claim most loudly that Mahalick breached his duty of loyalty by daring to pursue post-Entercom opportunities (Plf Concise Stmt. of Facts, ¶15; Hunt Dec., ¶¶ 10-17) and also by providing certain mostly undisclosed information and documents to Wilson (Plf Concise

Stmt. of Facts, ¶¶ 5, 6, 8, 10-12,14; Hunt Dec., ¶¶3-9).  The shear volume of the matters of which

they complain, and the established facts that in each case the actions complained of had no

relationship to the business of Entercom SF or Entercom Seattle, or did not involve confidential

information of either employer, or, in some cases, did not involve any information of the

employers at all, confidential or otherwise, undercuts their argument.  What they seek is to

convince through volume since they cannot convince through quality.

As to the first category, as noted above, Mahalick was absolutely free to pursue post-

Entercom employment, including taking initial steps such as negotiating the terms of that

employment, and to do so without informing Entercom.  *Bancroft-Whitney, supra,* 64 Cal.2d at

347; *Fowler v. Varian Associates, Inc.*, 196 Cal.App.3d 34, 41 (1987).

As to the second category, each of the seven items raised by Plaintiffs, and not already

addressed, is addressed below.

**(a)      Lui-Kwan**

Plaintiffs complain that Mahalick told Wilson that Lui-Kwan was going to be a super star

and would be good to have working at Alpha, but had told Entercom SF that Lui-Kwan should

not be renewed as on on-air personality.  (Plf. Concise Stmt. of Facts, ¶10; Hunt Dec., ¶ 3;

Memo in Suppt, 3-4)  Lui-Kwan was employed at Entercom SF in the dual capacity of on-air

personality and assistant program director.  His performance as the former was not good, as

reflected in his ratings and the advice given by Mahalick was entirely reasonable and

appropriate.  Lui-Kwan's identity certainly was not confidential information since he was on the

air and was widely known in the business to be working for Entercom SF.  Further, Lui-Kwan is

represented by an agent who negotiates on his behalf.  Mahalick expressing his opinion about

such a matter over which he had neither influence nor control was not a breach of his duty of loyalty, and certainly was not an act "inimical to the interests of Entercom."    Mahalick Dec. ¶ 22-24.

### (b)    The Portland Assessment

Plaintiffs also complain that Mahalick provided to Wilson his assessment of the Portland radio market.  (Plf Concise Stmt. of Facts, ¶¶5, 11, 12; Hunt Dec., ¶ 4; Plf Memo in Suppt, 6)  However, it is undisputed that neither Entercom SF nor Entercom Seattle does business in Portland, and obviously has no interests in Portland.  Yet, it was only to Entercom SF and, perhaps, to Entercom Seattle that any duty of loyalty was owed by Mahalick because it was only with them that he had an employment relationship.  According to Plaintiffs' own complaint, each is a separate and distinct legal entity, as are Entercom Portland and Entercom Communications, and each operates in a separate and distinct market.  Again, there certainly was nothing in this assessment that even arguably was inimical to the interests of Entercom SF or Entercom Seattle.  There is, at the very least, a material question of fact in this regard if, indeed, the evidence does not affirmatively establish that this was not a breach of the duty of loyalty.  Mahalick Dec. ¶ 20 and Ex. 5.

### (c)    Seattle Super Sonics

Plaintiffs assert that Mahalick breached his duty of loyalty by disclosing to Alpha an analysis of Entercom's broadcast agreement with the Seattle Super Sonics. (Plf Concise. Stmt. of Facts, ¶14; Hunt Dec., ¶ 5; Plf Memo in Suppt, 5)  Without seeing the agreement to which the analysis refers, it is difficult to assess whether the information referred to is in fact confidential or not, or even to determine who were the parties to the agreement.  To be sure, there is no allegation that the agreement was between the Super Sonics and Entercom SF.  There is not even

an assertion that it is between the Super Sonics and Entercom Seattle. The document is not dated, so it cannot be determined how old it was. Nor is there any way to determine whether the analysis was even confidential to begin with. There is no allegation that any particular steps were taken to mark it or protect it as such. Indeed, in April 2009, when the document was sent, Entercom Seattle had no sports station in Seattle, and had not had a sports station there since early 2007, fore than two years previously, when it traded the station to Bonneville International Corp. Further, in 2008, the Super Sonics relocated from Seattle to Oklahoma and changed their name, so the Super Sonics did not even exist in 2009. Mahalick Dec. ¶ 26 and Ex. 6.

In any case, the evidence establishes that Alpha was doing, and is doing, business only in Portland, Oregon, that Entercom Seattle does not do any business in Portland, and that Entercom SF does business in neither Portland nor Seattle. In short, there is not an ounce of evidence that Mahalick providing the analysis to Alpha in Portland was in any way, shape or form inimical to the interests of either Entercom Seattle or Entercom Portland.

### (d)   Strategic Plan

Plaintiffs complain that Mahalick emailed himself the strategic plan for Entercom SF. (Plf Concise. Stmt. of Facts, ¶13) There is no dispute that he did so. However, his uncontradicted testimony is that he did so routinely in the course of his employment at Entercom SF so he could use it in his work from home. There is not an ounce of evidence to the contrary. There is not an ounce of evidence that he ever disclosed it or its contents to any other person or entity, for the simple reason that he did not do so. Mahalick Dec. ¶ 25.

### (e)   Department Head Meeting Power Point

Plaintiffs complain that Mahalick forwarded Wilson a power point presentation from a department head meeting. (Plf Concise Stmt. of Facts, ¶14; Hunt Dec., ¶ 5; Plf Memo in Suppt, 5) Nowhere does that power point, though, indicate that it is a confidential document. Nor, on

the face of it, does it appear to contain confidential information. It asks many questions; twenty-five percent of it is devoted to how they will do business as a "green business"; it has much industry-generic information. But it does not contain what appears to be confidential information for a publicly traded company, and it does nothing to assert so. Mahalick Dec. ¶ 27 and Ex. 7.

Further, there certainly is nothing to indicate that Mahalick providing this San Francisco power point to Wilson in April 2009, before Alpha even existed in Portland, was inimical to the interests of Entercom SF, nor to indicate that any reasonable person would see it so.

### (f)    Digital Age Memo

At 8:30 in the evening on March 26, 2009, long before Alpha was formed in Portland, and even before Wilson's first exploratory meeting regarding reengaging in the radio industry in April 2009, Mahalick sent Wilson an email following a discussion between these two friends and radio veterans, regarding generally the impact of digital on the radio industry in general. Nothing in the email, or any of the references listed in the email, was confidential or proprietary to Entercom. Indeed, there is no fact to show that Mahalick did not share most or all of these thoughts with Entercom SF. The information was provided to an individual who was not engaged in the radio industry at the time, and had no firm plans to so engage, though it certainly was a possibility. The information relates to thoughts about the radio industry in general, based upon Mahalick's personal opinion and observation. It is ludicrous to assert such a general conversation between radio veterans, one not even involved in the business at the time, somehow breached Mahalick's duty of loyalty to his then-employer. None of the effort put into the email was on Entercom SF's or Entercom Seattle's time. Mahalick Dec. ¶ 18 and Ex. 4.

### (g)    Performer Promotion

Finally, Plaintiffs complain that Mahalick sent to Robert Proffitt a confidential summary of a promotion involving a well-known country singer. The promotion ran from at least October 2 to October 25, 2009. While it is true that Mahalick sent the summary to Proffitt, the entire

promotion, including a detailed set of rules providing far more information than that in the summary, was posted on the website singliketaylorswift.com and on the websites of each of Entercom Communication's country music stations as early as October 2, 2009, and perhaps before.  Mahalick Dec. ¶ 28 and Ex. 8.  Further, there is no evidence presented, because there is none, that Proffitt or Alpha ever used or further disclosed the information.  Indeed, when Mahalick sent the proposal to Proffitt it was merely as an example of an interesting promotion, not for his or Alpha's use, and, as noted, neither he nor Alpha did use or further disclose it.  Thus, while providing the summary to Proffitt may have been a lapse in judgment on the part of Mahalick, it was not an act inimical to the interests of Entercom SF or Seattle.  Mahalick Dec. ¶ 28.

### 4.    Summary

As there is no evidence that Mahalick engaged in acts inimical to the interests of Entercom SF or Seattle, and indeed the facts as set forth by Plaintiffs, even as Plaintiffs color those facts, show that Mahalick engaged in no such acts, *Huong Que, supra,* 150 Cal.App.4th at 410, and further show that Mahalick engaged in entirely legal actions to pursue post-Entercom SF employment, *Bancroft-Whitney, supra,* 64 Cal.2d at 347; *Fowler, supra,* 196 Cal.App.3d at 41, there are, at the very least, significant questions of material fact regarding to whom that duty was owed, what the interests were of those to whom it was owed, and whether any act by Mahalick breached that duty in light of what was done and who else was involved.

### IV.    CONCLUSION

The record in this case establishes there are, at the very least, significant genuine issues of material fact on the matters raised by Plaintiffs.  Fed. R. Civ. P. 56(b); *Celotex Corp., supra*, 477 U.S. at 322; *Diamond, supra,* 43 F.3d at 1540.  Plaintiffs manifestly have failed to carry their burden to demonstrate that no genuine issue of material fact exists, especially viewing the record in the light most favorable to Defendant Mahalick, and giving Mahalick the benefit of all favorable inferences that can reasonably be drawn from the record and the benefit of any doubt

as to the existence of any genuine issue of material fact, as must this court.  *Celotex*, *supra,* 477 U.S. at 323; *Matsushita Elec. Indus. Co., supra,* 475 U.S. at 587-88; *Adickes*, supra, 398 U.S. at 157-59.  Plaintiffs' motion therefore must be denied in its entirety as to Defendant Mahalick.

DATED this 24th day of May, 2010.

FITZGERALD ABBOTT & BEARDSLEY LLP


By: _____/s/ Michael E. Caples_____
**Michael E. Caples**, SBN No. 96340
(Admitted *Pro Hac Vice)*

1221 Broadway, 21st Floor
Oakland, CA 94612
Telephone:    (510) 451-3300
Facsimile:    (510) 451-1527
Email:    mcaples@fablaw.com

And

**Keith A. Ketterling,** OSB No. 913368
**Mark A. Friel,** OSB No. 002592
Stoll Stoll Berne Lokting & Shlachter P.C.
209 SW Oak Street, 5th Floor
Portland, OR 97204
Telephone:    (503) 227-1600
Facsimile:    (503) 227-6840
Email:    kketterling@stollberne.com
mfriel@stollberne.com

Attorneys for Defendant Scott Mahalick